JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant John Bunjevac (husband) appeals the trial court's decisions regarding the valuation of his business interest in a corporation for purposes of division of marital assets and the court's determination of the amount and duration of permanent spousal support awarded to plaintiff-appellee Maria Bunjevac (wife).
{¶ 2} The parties had been married for twenty-eight years at the time of their divorce. Wife had not worked since 1969 because she stayed home to raise their son. She allowed her cosmetology license to expire a few years before filing for divorce, and testified that her health problems, including an allergy to perm solution, prevented her from working. She stated she has mitral valve regurgitation, which she chooses not to treat; asthma, which she does treat with medications daily; and chronic depression, which she also treats with medication and treatment by a psychiatrist. She testified that her depression affects her memory and concentration and prevents her from working. The wife testified without contradiction that the family had enjoyed an upper middle class lifestyle. The magistrate awarded wife $3,050 per month in spousal support.
{¶ 3} At the time wife filed for divorce, husband owned a one-third share in MDF Tool Corporation (MDF). In order to value the business, wife hired Bernard Agin, a C.P.A., who determined the entire business as being worth $973,262 as of September 30, 1997, making husband's one-third share worth $324,420.67. The accountant noted that because husband was a minority shareholder he lacked control of the business, and because of this lack of control the value of his one-third share should be reduced by 25%, or nearly $80,000.
{¶ 4} After the valuation date set by the court, but before the divorce was final, one of the three shareholders in MDF died, leaving husband as a 50% shareholder. Before the magistrate's decision was entered, husband bought the other shareholder's 50% interest, giving him full control over the company. The magistrate's decision allocated the full one-third value of husband's share at the time of valuation as marital assets, disregarding the 25% discount for lack of majority control.
{¶ 5} Husband states two assignments of error. For his first assignment of error, husband states:
{¶ 6} I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THE MARITAL SHARE OF THE APPELLANT'S BUSINESS WITHOUT APPLYING A TWENTY-FIVE PERCENT DISCOUNT FOR APPELLANT'S MINORITY INTEREST IN SAME.
{¶ 7} Husband argues that the court should have applied the 25% discount to its value as stated in the accountant's report, because the court fixed the date wife filed for divorce, March 6, 1997, as the date for valuing the assets, and at that time he did not have a managing share of the company. He claims that the accountant had superior understanding of the valuation process and therefore the accountant's opinion should control the court's decision. The parties agreed to accept the valuation of this expert as accurate for the purposes of this appraisal.[1]
{¶ 8} The accountant's report, as quoted in the magistrate's decision, states in part:
 {¶ 9} Based on the assumptions and limiting conditions as described in this report, as well as the facts and circumstances as of the valuation date, we conclude the fair market value of the (50%) interest of John Bunjevac as if September 30, 1997 is approximately $365,000. If however, one hundred percent of the company were sold to a third party, with each of the shareholders receiving fifty percent of the net proceeds, or if the Company were sold by one shareholder to another, the discount used for lack of control would not apply. In that case the fair market value of the interest of John Bunjevac in MDF Tool Corporation, Inc. as of September 30, 1997 is approximately $487,000.[2]
{¶ 10} Magistrate's Opinion at 14.
{¶ 11} Husband's argument fails to consider that the accountant's report stated that if "the Company were sold by one shareholder to another, the discount used for lack of control would not apply." Husband claims that the court should have assessed the value in exactly the same manner as the accountant assessed it, not taking into consideration the subsequent changes in circumstances in the corporation.
{¶ 12} We disagree. A reviewing court gives deference to the trial court absent an abuse of discretion, that is, unless the trial court acted unreasonably, unconscionably, or arbitrarily. "The trial court is not required to use the same de facto termination date consistently in valuing properties of the marital estate when the trial court has adequately explained its reasoning for deviating." Kramer v. Kramer (July 29, 1999), Cuyahoga App. No. 74166, 1999 Ohio App. LEXIS 3491, at *1.
{¶ 13} Here the magistrate clearly explained her reasoning for the method of valuation she uses. The magistrate's decision states:
 {¶ 14} Faced with the choice between a discount which was offered for a fact situation drastically different from the one in question, and no minority discount, and without the facts or expertise to determine an appropriate amount of minority discount, if any, the Court is constrained to accept the value of the company without the minority discount.
{¶ 15} Magistrate's decision at 15. The magistrate also notes that "whether to apply a minority discount and what minority discount is used is fact and circumstance dependant." Id.
{¶ 16} This court has noted previously:
 {¶ 17} In valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. * * * A trial court may rely in whole or in part on an expert's opinion when setting a value on marital property * * * There are no rigid rules used by courts to determine value as equity depends on the totality of the circumstances.
{¶ 18} Strong v. Strong (Nov. 25, 198), Cuyahoga App. No. 73670, 1998 Ohio App. LEXIS 5592, at *5-6.
{¶ 19} A careful review of the transcripts and magistrate's decision shows that the decision is rationally and thoughtfully considered. We find no abuse of discretion in the magistrate's decision or the trial court's judgment entry on this issue. The first assignment of error is overruled.
{¶ 20} For his second assignment of error, husband states:
 {¶ 21} II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED SPOUSAL SUPPORT AMOUNT AND DURATION UPON INCOMPETENT AND UNRELIABLE EVIDENCE.
{¶ 22} Husband argues that wife's failure to provide expert testimony to support her contention that she is not employable should have been fatal to her claim that she cannot work and needs total spousal support. He states, "[w]hile a party may certainly testify as to how they feel, their [sic] overall health conditions and concerns and their work experience, expert medical testimony is required to establish that those medical conditions a party testifies to absolutely prevent them from working at all in any capacity at any time in the future when a party's own testimony is not helpful in accordance with Evidence Rule 701." Appellee's brief at 9.[3]
{¶ 23} An award of spousal support is controlled by R.C. 3105.18, which states in pertinent part:
 {¶ 24} (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 25} (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 26} (b) The relative earning abilities of the parties;
 {¶ 27} (c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 28} (d) The retirement benefits of the parties;
{¶ 29} (e) The duration of the marriage;
 {¶ 30} (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 31} (g) The standard of living of the parties established during the marriage;
 {¶ 32} (h) The relative extent of education of the parties;
 {¶ 33} (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 34} (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 35} (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 36} (l) The tax consequences, for each party, of an award of spousal support;
 {¶ 37} (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 38} (n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 39} (2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
{¶ 40} R.C. 3105.18(C). The magistrate's decision specifically addressed each of these factors. In addition to the findings concerning wife's health, the magistrate found that wife had not been employed full time since 1969 and has a much lower earning capacity than the husband; that wife's lack of work experience and significant health problems would seriously limit her capacity for work, at least initially; that her depression was her most debilitating health problem as far as employability is concerned; that the marriage was one of long duration; that the parties had established a middle class lifestyle; and that wife had contributed to husband's earning capacity.
{¶ 41} The magistrate concluded that husband
 {¶ 42} * * * is ordered to pay spousal support in the amount of $3050 (three thousand and fifty dollars) per month * * *. Because of the length of the marriage, the [wife]'s bad health and lack of work experience, and because of the disparity in the parties' incomes and earning abilities, the spousal support shall terminate upon either party's death or the [wife]'s remarriage or cohabitation with a non-related male in a relationship equivalent to marriage or until further order of the Court.
{¶ 43} Magistrate's decision at 24.
{¶ 44} Husband argues that wife could hold at least a part-time job to lessen the burden on him for her support. He claims that without expert medical testimony concerning her ability or inability to work, the court erred in simply believing wife's testimony as proof of her health.
{¶ 45} This court has held otherwise: "[I]t is not necessary for a party to present expert medical testimony substantiating certain medical problems where the injured party testifies and is subject to thorough cross-examination." Gullia at 663, citation omitted. In Gullia, the husband argued that "[t]he trial court committed reversible error allowing [wife] to testify as to the nature and extent of a knee injury * * *. It is [husband's] position that, since [wife] offered no expert testimony as to the extent, seriousness or duration of the alleged injury, the trial court abused its discretion in basing its alimony and property division awards on [wife's] testimony." Gullia at 662. TheGullia court held that a "trial court is not precluded from allowing [wife] to testify regarding her own medical condition, especially where [wife] is subject to cross-examination." Id.
{¶ 46} In the case at bar, for nearly forty pages husband's counsel cross-examined wife concerning her health and her ability to work. He questioned her regarding how much her asthma would affect her ability to work and how much her depression affected her ability to work. He elicited testimony that she has trouble concentrating while reading and cannot remember what she has read. Wife also testified that the recent death of her sister had affected her ability to concentrate and remember things. When defense counsel asked wife how often she visited doctors, she noted that she visits her psychiatrist once or twice a month. The court sustained an objection to husband's attorney inquiring about the contents of her visits with the psychiatrist.
{¶ 47} Defense counsel also engaged in a long line of questioning regarding wife's allegations that despite her having had three different companies install sophisticated burglar alarms, husband was breaking into her house and taking things. On redirect, wife stated that among the things missing were shoes and underpants. This line of questioning, along with the testimony concerning wife's depression, not only provided husband's counsel with the opportunity to cross-examine wife concerning her health-related limitations, but also provided the court with a first-hand picture of wife's demeanor and her psychological state.
{¶ 48} Additionally, we note that wife was not required to go out and look for work to reduce the burden on husband:
 {¶ 49} R.C. 3105.18(B) neither imposes a duty to seek employment nor makes failure to seek employment a determinative factor to be considered. Rather, the factor to be considered concerning employment is "the relative earning abilities of the parties." Nor is failure to seek employment otherwise independently a determinative factor. In this regard, the relevant and determinative factor is "earning ability."
{¶ 50} McCoy v. McCoy (1993), 91 Ohio App.3d 570, 582.
{¶ 51} The magistrate addressed the discrepancy in the parties' earning abilities at length in her decision. Wife's health problems were not the only factor in the magistrate's decision, and the trial court did not err in awarding lifetime spousal support, subject to further order of the court.
{¶ 52} The second assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND JAMES J. SWEENEY, J., CONCUR
[1] We note that the accountant's report is not included in the file before us. Neither side disputes the accuracy of the magistrate's decision that quotes part of the report, however, so we rely on the accuracy of the magistrate's decision.
[2] The accountant's report was prepared after the third partner's death, so his evaluation is based on defendant's owning a one-half share of the company. The court chose an earlier date, however, for the valuation date; therefore, it assigned the value of the company at one-third the total value rather than the one-half used in the accountant's report. The court did rely on the accountant's total valuation of the company in its calculation of the one-third marital share.
[3] Evid.R. 701 states: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."